GIDEON CURRIER vs. HENRY B. WILLIAMS.

Suffolk.    January 26, 1905. — October 16, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Insolvency*, Discharge when a bar.    *Practice, Civil*, Exceptions.

One owing $3,500 offered certain land to his creditor which the creditor refused to accept in satisfaction of the debt.    The debtor then gave the creditor two mortgages on the land with an instrument declaring that they were " sold absolutely," and later conveyed to the creditor the land itself subject to the mortgages, with an instrument stating that whenever the creditor should sell the land the debtor would pay to the creditor any balance that might remain due on his indebtedness of $3,500 after deducting all sums received by the creditor from the sale of the land.    Two years later the debtor obtained a discharge in insolvency. About twenty years later the creditor sold the land for less than the amount of his claim and brought an action for the balance.    The debtor set up his discharge in insolvency.    *Held,* that either the land was conveyed as security for the debt, in which case the discharge in insolvency clearly was a bar, or the conveyance was absolute and was to operate as payment of the debt *pro tanto* by the proceeds of the sale when the land was sold, and that in this case also the discharge was a bar, as the debt although not payable until the land was sold was all the time due and thus provable under Gen. Sts. c. 118, § 25.

After the time allowed for filing exceptions has expired, one who has filed a bill of exceptions may be allowed to amend it by stating more accurately an exception already contained in his bill, but cannot be allowed to add an exception not originally stated.

CONTRACT upon two instruments under seal, as follows:

" Exhibit A.

" Whereas Henry Bigelow Williams of Boston, in the Commonwealth of Massachusetts, is owing to Gideon Currier of said Boston, thirty-five hundred dollars ($3500).

" And whereas said Williams has this day caused Alden B. Buttrick of Lowell, in said Commonwealth, to assign and convey to said Currier a mortgage and the promissory note therein secured, given by George Ross to said Williams, dated July 28, 1876 and recorded with Suffolk Deeds, libro 1337, folio 198 and heretofore assigned by said Williams to said Buttrick;

" And whereas said Williams has this day caused said Buttrick to assign and convey to said Currier another mortgage and the promissory note therein secured, given by said Ross to said

Williams, and acknowledged July 28, 1876 and recorded with Suffolk Deeds Libro 1337, folio 202 and heretofore assigned by said Williams to said Buttrick, both of said mortgages being sold absolutely by said Williams to said Currier in payment of said Williams' aforesaid indebtedness to said Currier.

"Now therefore, it is mutually covenanted and agreed by and between said Currier and said Williams and their respective legal representatives and assigns, as follows:—

"First. That whenever said Currier shall sell or assign one or both of said mortgages (which he is at liberty to do at any time) upon consulting said Williams, he shall give to said Williams, credit for the net proceeds of such sale on his aforesaid indebtedness.

"Second. Said Williams agrees that he will pay to said Currier, any balance that may be due to said Currier on his aforesaid indebtedness, after crediting the net proceeds of said sales.

"Third. Said mortgages are sold absolutely by said Williams to said Currier, and the amount to be paid therefor by said Currier, shall be computed and ascertained as aforesaid.

"In Witness Whereof, said Gideon Currier and said Henry Bigelow Williams have hereunto set their hands and seals this eighth day of November A. D. 1876.

"Henry Bigelow Williams [seal]
Gideon Currier [seal]"

"Witness
    J. F. Ballistond to both."


"Exhibit B.

"Whereas the within named George Ross has this day at the request of said Henry Bigelow Williams, given to said Currier a quitclaim deed of the premises described in the two within named mortgages and said Currier has at said Williams' request, surrendered to said Ross, the two promissory notes secured by said mortgage.

"Now Therefore, said Henry B. Williams in consideration thereof and of other sufficient consideration to him paid by said Currier, the receipt whereof is hereby acknowledged hereby covenants and agrees to and with said Currier and his heirs, legal representatives and assigns, that whenever said Currier

shall sell said property, (which said Currier is at liberty to do at any time as aforesaid,) he will pay to said Currier, any balance that may remain due on his aforesaid indebtedness of $3500, after deducting all sums received by said Currier from the sale of said property.

" Said Williams further agrees that he will pay all taxes levied on said property, and will also pay to said Currier semiannually at the rate of 6 1-2 per cent, the interest on his said indebtedness of $3500.

" This ageement is made for the purpose of providing for the payment of any balance due from said Williams to said Currier.

" To the faithful performance of the foregoing, said Williams binds himself and his heirs, legal representatives and assigns :

" Witness my hand and seal this seventeenth day of August A. D. 1877.

" August A. D. 1877        Henry Bigelow Williams [seal]
" Witness
        Josiah W. Hubbard."

The declaration alleged that a large balance was due to the plaintiff after the sale of all the land conveyed to him. Writ in the Supreme Judicial Court dated May 5, 1903.

The answer was a general denial ; a discharge in insolvency granted September 26, 1879, on a petition filed February 21, 1879 ; the six year statute of limitations; the twenty year statute of limitations; that the plaintiff was required to sell the real estate mentioned in the contracts in a reasonable manner and within a reasonable time, which he had failed to do, but had continued to hold the major part of the real estate, as owner thereof, for a wholly unreasonable time, to wit, the space of more than twenty years; that the claim of the plaintiff had been fully paid, and that the plaintiff in selling the property was negligent of the rights and interest of the defendant, and was not in the exercise of good faith toward the defendant.

The case was tried before *Morton,* J. It appeared that in November, 1876, the defendant owed the plaintiff $3,500, being the balance due upon a contract for mason work upon the Hotel Brunswick in Boston. It also appeared that before Exhibit A was executed, on November 8, 1876, " the defend-

ant offered the lots of land referred to in the contract, in payment of the account due, which the plaintiff declined to accept." Thereupon the defendant caused two mortgages, one on each lot, amounting together to the amount due, to be assigned to the plaintiff under the agreement stated in Exhibit A.

Nine months later, on August 17, 1877, Williams caused the fee in the two lots subject to these two mortgages to be conveyed to the plaintiff, and Exhibit B was executed.

Exhibits A and B were written on one double sheet of paper.

It also appeared that on February 21, 1879, the defendant filed a petition in insolvency, and that on September 26, 1879, a discharge was granted to him for all debts due on February 21, 1879.

In 1890 the plaintiff sold one half of one of the lots and in 1891 the remaining half of it. In 1903 he sold the other lot, leaving as the plaintiff contended a balance still due to him.

The plaintiff offered to show in rebuttal that the defendant wilfully and intentionally omitted the plaintiff's name from his schedule of creditors in the insolvency proceedings and the address of the plaintiff, and placed in his schedule a fictitious debt to the plaintiff of $25.68, and that the plaintiff had no notice of the insolvency proceedings until more than two years after the defendant's discharge and took no part therein. This offer was stated to be made " not for the purpose of seeking to invalidate the fact or regularity of the defendant's discharge, but only for the purpose of avoiding its effect as to the plaintiff in the action at bar. The court rejected this offer of proof, and the plaintiff excepted, but this exception was not included in the plaintiff's bill of exceptions filed in this case, and it is included in this report against the objection of the defendant, and is only to be considered if the plaintiff is entitled to have his exception heard."

At the close of the evidence the defendant asked the justice to order a verdict for the defendant. This he refused to do, and submitted the case to the jury, with an agreement of the parties that if the jury found for the plaintiff the damages should be $825.27. A verdict was returned for the plaintiff in accordance with the agreement, and at the request of both of the parties the justice reported the case for determination by this court.

The second and fourth paragraphs of the terms of the reservation, the others having become immaterial, were as follows :

" Second. If there was no evidence for the jury, and the defendant's request that a verdict be ordered for him should have been granted, judgment is to be entered for the defendant."

" Fourth. If a verdict should have been ordered for the defendant solely on the ground of his having received a discharge in insolvency, and if the plaintiff's offer of proof in rebuttal was competent and should have been admitted wholly or in part, the plaintiff's exception to its exclusion is to be sustained, and a new trial ordered, provided that said exception is still open to the plaintiff."

The case was argued at the bar in January, 1905, before *Knowlton*, C. J., *Morton, Barker, Loring* & *Braley*, JJ., and afterwards was submitted on briefs to all the justices. Mr. Justice Barker died before the decision of the case.

*H. T. Richardson*, for the plaintiff.

*R. F. Sturgis*, for the defendant.

LORING, J. We are of opinion that the debt due the plaintiff is barred by the defendant's discharge in insolvency.

If the land was conveyed as security for the debt in spite of the provision in Exhibit A that " said mortgages are sold absolutely by said Williams to Currier," (as some of my brethren think,) the discharge in insolvency is plainly a bar.

If on the other hand (as others of us think) the result of Exhibits A and B was not to make these two parcels of land security for the debt, the discharge in insolvency is still a bar. If it was not by way of security it was a conveyance to Currier by Williams of the fee in these two lots of land, which was absolute and final on the part of Williams and was accepted by Currier in payment for the debt, so far as it went, that is to say, to the amount realized when the two lots were sold. The parties might have provided that the conveyance of the land should be coupled with an agreement by Williams to make the plaintiff good against loss if the land did not realize the amount of the debt. Had they done so, the discharge would not have been a bar. In that case, until the land was sold it would be altogether contingent whether there was a debt or not. In such a case the discharge is not a bar. *French* v. *Morse*, 2 Gray,

111. *Morton* v. *Richards*, 13 Gray, 15. *Deane* v. *Caldwell*, 127 Mass. 242. *McDermott* v. *Hall*, 177 Mass. 224. *McIntire* v. *Cottrell*, 185 Mass. 178. *Harmon* v. *McDonald*, 187 Mass. 578.

But that is just what the plaintiff and the defendant did not do in the case at bar. Currier did not agree to take the land in payment. He introduced evidence that he "declined to accept" the land on those terms. What he did agree to was that he would "give to said Williams credit for the net proceeds of such sale on his aforesaid indebtedness," in the words of the first agreement of Exhibit A. Williams did not agree to pay to Currier such sum as would make the defendant whole in case the land sold for less than the amount of the debt. What Williams did agree to do was to "pay to said Currier any balance that may be due to said Currier on his aforesaid indebtedness, after crediting the net proceeds," in the language of the second agreement of Exhibit A ; and, in the language of Exhibit B, that "whenever said Currier shall sell said property, (which said Currier is at liberty to do at any time as aforesaid,) he will pay to said Currier any balance that may remain due on his aforesaid indebtedness of $3500, after deducting all sums received by said Currier from the sale of said property " ; and that he " will also pay to said Currier semiannually at the rate of 6 1-2 per cent, the interest on his said indebtedness of $3500."

The effect of these stipulations is that the original indebtedness was to remain due; when the land was sold, the net proceeds were to be credited; and until it was sold the original indebtedness was not payable because the amount paid by the conveyance of the two lots of land had not been ascertained. Until then the debt was due although not payable, and was provable as such under Gen. Sts. c. 118, § 25.

By the terms of the report the rejection of the offer of proof in rebuttal " is only to be considered if the plaintiff is entitled to have his exception heard." A party may be allowed to amend his bill of exceptions to state more accurately an exception stated by him in his bill, within the time allowed for filing a bill, but not to add an exception not originally stated in the bill of exceptions. See *Dorr* v. *Schenck*, 187 Mass. 542, where the earlier cases are collected.

We do not intend to intimate that there was anything in the exception in question under St. 1879, c. 245, § 4.

The entry must be

*Judgment for the defendant.*